## AFFIDAVIT

I, Jeffrey R. Norman, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA) and have been so employed since March 2020. I am currently assigned to the Kansas City District Office. Prior to my employment with DEA, I served as a police officer with the City of St. Charles and City of Manchester, Missouri Police Departments for approximately ten years. As a DEA Special Agent, I have received specialized training from the DEA academy in Quantico, Virginia as well as other venues and I have been involved in the investigations of drug trafficking, money laundering, and the movement and concealment of proceeds and assets purchased with proceeds of drug transactions.

2. While employed as a law enforcement officer, I have participated in numerous investigations involving, among other crimes, the possession, manufacture and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); the unlawful use of a communications device to commit and facilitate the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); drug trafficking conspiracies, in violation of Title 21, United States Code, Section 846; money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957; conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h); the possession of firearms by felons and other prohibited persons, in violation of Title 18, United States Code, Section 922(g); and the possession of firearms in furtherance of drug trafficking offenses and/or crimes of violence, in violation of Title 18, United States Code, Section 924(c).

3. During my career as a law enforcement officer, I have received specialized training and have been involved in numerous investigations, either as a case agent or in various support

roles, at both the state and federal level, of firearms, explosives and violent felony violations, drug trafficking, money laundering, and the movement and concealment of proceeds of specified unlawful activity and assets purchased with proceeds of specified unlawful activity, including drug trafficking offenses. My training and experience has also involved course work, physical surveillance, the execution of search warrants, interviews of witnesses, and the arrests and interviews of felony and misdemeanor defendants. I am familiar with some of the code words used by individuals committing violent offenses and/or drug trafficking. On numerous occasions I have spoken with witnesses, suspects, defendants, and investigators concerning the methods and practices used by violent offenders and/or drug traffickers in carrying out their unlawful activities, including methods of concealment in order to avoid detection. Through these investigations, my training, experience, conversations with experienced agents, other investigators and law enforcement personnel, I am aware of the following:

    a.    that individuals involved in the manufacturing and distribution of controlled substances maintain books, records, receipts, notes, correspondence, ledgers and other records, relating to the transportation, ordering, and/or distribution of controlled substances, even though sometimes in code; such individuals commonly front (deliver on consignment) controlled substances and maintain such records in doing so;

    b.    that it is common practice for those involved in illicit drug trafficking of controlled substances to conceal contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence, or other property, for ready access, and to hide them from law enforcement authorities;

    c.    that persons involved in illicit drug trafficking conceal in their residences or other property caches of drugs, large amounts of currency, financial instruments, and other assets of value which are the proceeds of drug transactions; and evidence of financial

2

transactions relating to obtaining, transferring, secreting, or spending of large sums of money related to engagement in drug trafficking activities; and that persons involved in illicit drug trafficking often purchase substantial assets including cars, boats, and homes with the proceeds of drug transactions in manners to conceal the true source of the funds;

      d.      that persons engaged in illicit drug trafficking maintain on the premises, paraphernalia for packaging, cutting, weighing, and distributing controlled substances, and equipment used in the packaging, weighing, and otherwise preparing for the distribution of controlled substances;

      e.      that persons engaged in illicit drug trafficking maintain on the premises addresses and telephone numbers in books or papers and in contact lists in cell phones which reflect the names, addresses, and/or telephone numbers for their sources, customers, and associates related to their drug trafficking activities, even though sometimes in code;

      f.      that persons engaged in illicit drug trafficking maintain on the premises photographs and/or video cassettes of co-conspirators, associates, assets, and controlled substances;

      g.      that persons engaged in illicit drug trafficking maintain on the premises tickets, schedules, papers, notes, receipts, and other items relating to domestic and foreign travel;

      h.      that persons involved in distributing controlled substances keep and maintain firearms and other explosive devices to protect themselves from other drug traffickers and from apprehension by law enforcement officers;

      i.      that persons who engage in drug distribution activity utilize cell phones and other communication devices in order to store contact lists and to arrange for delivery and distribution of controlled substances; and

j. that methamphetamine is a Schedule II controlled substance, and the manufacture, distribution, or possession with intent to distribute methamphetamine and conspiracy to commit any of those crimes are violations of 21 U.S.C. §§ 841(a)(1) and 846. I am also aware that the use of a communication facility to facilitate drug trafficking is a violation of 21 U.S.C. § 843.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **LOCATION TO BE SEARCHED**

5. This affidavit is being submitted in support of an application to search for items listed in Attachment B, believed to be located respectively at the following described location:

a. the basement apartment located at 3219 East 8th Street, Kansas City, Jackson County, Missouri, (hereinafter "**Target Residence**"). The Target Residence is a beige colored brick and mortar apartment building marked with both 3219 and 3221 on either side of the unlocked, common area front door. Inside the front of the building are four locked individual apartment doors, none of which are marked. There are two main floor apartments and two second story apartments whose layouts cover the length of the building from North to South. There are four mailboxes on the West side of the interior, two of which are marked "1W" and "2W." There is an additional lone opening near the main mailboxes which appears to be a mail slot for a basement apartment although it is not marked with any identifying information.

b. On the rear of the building there are two doors. The eastern-most door remains unlocked and opens to a common area which provides access to the back of the

four main floor and second story apartments. The western-most door on the outside of the building is a locked door and requires a key to enter. Investigators have observed only the target-subject of this investigation use this door which he accesses by utilizing a key to unlock the door. The door is unmarked and there does not appear to be any other access point to the basement. Although the door is unmarked, I have conferred with the United States Postal Service and I was notified by that agency that this basement is identified as "Unit B" at 3219 East 8th Street, Kansas City, Missouri (**Target Residence**). All other residents have been observed using the unlocked, common area doors on the front and back of the building.

6. There is probable cause to believe that a search of this basement apartment will lead to evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances, possession with the intent to distribute controlled substances and conspiracy to distribute controlled substances, as well as the identification of individuals who are or have been engaged in the commission of those crimes. The controlled substance that is the primary focus of this investigation is methamphetamine, a Schedule II controlled substance.

## PROBABLE CAUSE

7. The DEA Kansas City District Office (KCDO) Group 43 is investigating methamphetamine distributors operating in the Kansas City metropolitan area. During the month of October 2022, KCDO investigators received information from a DEA confidential source (CS) that an individual was distributing large quantities of crystal methamphetamine in Kansas City, Missouri. The CS stated they were introduced to this methamphetamine source of supply by a mutual acquaintance and the CS was told the distributor's name was "Jose." The CS stated that Jose provided the CS a phone number of (956) 643-6720. The CS stated Jose told the CS he could handle any amount of methamphetamine the CS was willing to purchase. DEA

Intelligence Analyst (IA) Bryan Schmuck was provided with the phone number that the CS reported Jose gave to him/her. The phone number was found to be connected to the T-Mobile network. IA Schmuck sent an administrative subpoena to T-Mobile for the subscriber information as well as the top callers. T-Mobile sent back the information requested which revealed a subscriber name of Raul GARCIA. For the purposes of this affidavit, GARCIA is the identified target-subject of this investigation. Investigators have been unable to determine whether Raul GARCIA is the target-subject's real name, but for purposes of this affidavit I will refer to the target-subject as GARCIA.

8. On October 11, 2022, KCDO investigators conducted a controlled purchase of approximately four ounces of methamphetamine for $1,000.00 from GARCIA utilizing the CS. At approximately 12:00 p.m., KCDO investigators established surveillance in the area of the 5000-6000 block of St. John Avenue, Kansas City, Missouri. The CS contacted the mutual friend of the CS and GARCIA who established the meeting place for the methamphetamine deal at 5520 St. John Avenue, Kansas City, Missouri. At approximately 12:20 p.m., the CS arrived at the deal location and parked his/her vehicle. A short time later, the mutual friend was observed at the driver's side of the CS's vehicle where an exchange took place. The mutual friend was observed walking back to a gray Jeep Cherokee bearing Missouri temporary tag 06ACH1 and got into the passenger seat. The driver of the Cherokee vehicle was observed to be an overweight Hispanic male with a bright green shirt and baseball cap. A records check of the Cherokee's temporary tag indicated that it was registered to Miguel ZAVALA-ALEJO of 2029 Denver Avenue, Kansas City, Missouri. Investigators believe that the driver of the Cherokee was GARCIA. Investigators met with the CS following the controlled buy. The CS provided a plastic grocery-style sack containing four, clear, plastic baggies. Each baggie contained a white, crystalline substance and appeared to weigh approximately one ounce each. The crystalline substance appeared to be methamphetamine

and investigators used a field test on the suspected methamphetamine and there was a positive response for the presence of methamphetamine. The suspected methamphetamine was sent to a DEA forensic drug testing laboratory and the lab confirmed that it was methamphetamine. The CS stated they were given the grocery sack containing methamphetamine in exchange for $1,000.00.

9. On October 21, 2022, KCDO investigators conducted a controlled purchase of approximately eleven (11) ounces of methamphetamine for $2,000.00 from GARCIA utilizing the CS. At approximately 11:30 a.m., KCDO investigators initiated surveillance in the 5000 block of St. John Avenue, Kansas City, Missouri. KCDO investigators also met with the CS who stated he/she began receiving phone calls and text messages from GARCIA utilizing a new phone number: (816) 819-9158. Investigators observed the CS call this phone number and set up the methamphetamine deal with GARCIA at the same location as the previous controlled buy. At approximately 12:10 p.m., KCDO investigators observed GARCIA arrive at 5520 St. John Avenue in the gray Jeep Cherokee. The individual that investigators know as GARCIA was positively identified as the driver of the Jeep Cherokee from the first buy on October 11, 2022. At approximately 12:15 p.m., the CS arrived at the location and walked to GARCIA's vehicle where he/she sat in the passenger seat. The CS stated that GARCIA provided the CS a black grocery style sack containing eleven (11) clear plastic bags containing a white/clear crystalline substance. Each bag appeared to contain one ounce of crystal methamphetamine. Investigators used a field test on the suspected methamphetamine and there was a positive response for the presence of methamphetamine. The suspected methamphetamine was sent to a DEA forensic drug testing laboratory and the lab confirmed that it was methamphetamine.

10. KCDO investigators maintained surveillance on GARCIA after the CS exited his vehicle and GARCIA drove away. Investigators followed GARCIA to several other locations

including restaurants before ultimately parking on the West side of an apartment building located at 3219 East 8th Street, Unit B, Kansas City, Missouri (**Target Residence**). Special Agent Jeffrey Norman observed GARCIA unlock and walk into the western-most rear door of the apartment building where investigators believe GARCIA to be primarily residing. KCDO investigators have conducted many hours surveilling GARCIA and they have observed GARCIA at the **Target Residence** on most days. Accordingly, I believe that GARCIA resides at the **Target Residence**.

11. In early November 2022, the CS stated GARCIA began driving a white Honda Accord. On November 3, 2022, I established surveillance at the **Target Residence**. I observed a white Honda Accord bearing Missouri license plate RJ3-F2Z. I observed that the Honda was parked in the same location on the West side of the **Target Residence** where investigators had previously observed GARCIA consistently park the gray Jeep Cherokee. I then observed GARCIA drive away from the **Target Residence** in the white Honda Accord. A short time later, Kansas City Police Department marked units conducted a traffic stop on the Honda after investigators observed traffic violations near Indiana Avenue and Independence Avenue. GARCIA provided a Mexican chauffer's license with the name Saul Dias GONZALEZ. GARCIA told the officers that he resided at 3219 East 8th Street, Kansas City, Missouri, the **Target Residence.**

12. On November 22, 2022, KCDO investigators conducted a controlled purchase of approximately eleven (11) ounces of methamphetamine for $2000.00 from GARCIA utilizing the CS. At approximately 9:00 a.m., KCDO investigators initiated surveillance at the **Target Residence**. Investigators observed GARCIA exit the basement apartment and drive away in the white Honda Accord. Investigators maintained surveillance of GARCIA as he appeared to run errands around the area. KCDO investigators met with the CS who contacted GARCIA by phone using (816) 819-9158 and set the methamphetamine deal for the same location as the previous deals at 5520 St. John Avenue, Kansas City, Missouri. Investigators observed GARCIA drive back

to the **Target Residence** and enter the western-most back door which leads to stairs down to the basement apartment. GARCIA utilized a key to unlock and enter this door from outside the building. GARCIA was observed exiting the basement apartment door a short time later and Task Force Officer Orion Mata observed GARCIA placing an unknown object into his jacket packet as GARCIA exited. GARCIA was observed locking the basement apartment door after he exited the apartment.

13. Investigators followed GARCIA to the deal location where the CS entered GARCIA's vehicle. The CS stated GARCIA brought only five ounces of the requested eleven ounces. The CS requested another six ounces while in the vehicle and GARCIA agreed. The CS exited GARCIA's vehicle and investigators maintained surveillance on GARCIA as he drove back to the **Target Residence**. GARCIA entered the basement apartment door using a key to first unlock the door from the outside. GARCIA exited a short time later, locking the basement apartment door. GARCIA entered his Honda and traveled back to the deal location where the CS again sat in the passenger seat of his vehicle. GARCIA provided the CS with two grocery-style sacks containing six and five clear plastic bags filled with a white/crystal substance respectively. The CS gave GARCIA $2,000.00 in exchange for the approximate eleven total ounces of methamphetamine. Each bag appeared to contain one ounce of crystal methamphetamine. Investigators utilized a field-test on the suspected methamphetamine and it responded with a positive response for the presence of methamphetamine.

14. Based on the aforementioned information, there is probable cause to believe the **Target Residence** is being used to store illegal controlled substances, specifically methamphetamine, for the purposes of distributing them throughout the Kansas City metropolitan area. Based on my training, experience, and knowledge of this investigation, I believe that GARCIA is storing methamphetamine at the **Target Residence**.

15. The terms "records", "documents", and "information" include all of the items of evidence described in this search warrant, in whatever form and by whatever means they may have been created or stored, including iPhones, iPads, and other smart phones, electronic devices, and/or computers.

16. I believe that Raul GARCIA and others known and unknown are currently utilizing the basement apartment identified as Unit B of 3219 East 8th Street, Kansas City, Missouri to further several federal offenses to include: possession with intent to distribute methamphetamine, in violation of 21 United States Code Section 841; use of a communication facility to facilitate drug trafficking in violation of 21 United States Code Section 843, and conspiracy to distribute and possess with the intent to distribute methamphetamine, in violation of 21 United States Code Section 846;

17. Based on my training and experience, and through intelligence gained in the course of this investigation, I expect to find fruits, instrumentalities, and contraband as further described in Attachment B, at the residence located in the basement apartment of 3219 East 8th Street, Unit B, Kansas City, Missouri.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Jeffrey R Norman*
JEFFREY R. NORMAN
Special Agent
Drug Enforcement Administration

Sworn to and subscribed by telephone to me
on this, ___ day of December 2022.
    December 9, 2022



HONORABLE JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri